No. 22-30088

———————————

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

———————————

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**JAMES CALVIN PATTERSON,**

Defendant-Appellant.

———————————

**Appeal from the United States District Court
for the District of Oregon
Medford Division
No. 1:19-CR-00224-AA-1
The Honorable Ann L. Aiken**

———————————

**BRIEF OF APPELLANT**

———————————

**Brian C. Butler
Assistant Federal Public Defender
15 Newtown Street
Medford, Oregon 97501
(541) 776-3630**

**Attorney for Defendant-Appellant**

# TABLE OF CONTENTS

**Page**

Table of Authorities ......................................................................... iii

Introduction And Summary Of Argument .................................................1

Statement Of Jurisdiction...........................................................4

Statement Of Issues....................................................................4

Pertinent Statutory Provisions........................................................5

Statement Of The Case ...............................................................8

Nature Of The Case....................................................................8

Relevant Factual History And Course Of Proceedings ............................8

Custody Status.........................................................................12

Argument................................................................................12

I.    Sentencing Mr. Patterson To The ACCA's Enhanced Statutory
      Minimum Violated His Fifth And Sixth Amendment Rights. .....................12

      A.    Standard of Review ...........................................................13

      B.    Fact finding Under The ACCA's Occasions Clause Is Subject To
            The Procedural Protections Of The Fifth And Sixth
            Amendments...........................................................13

      C.    This Court's Precedent Allowing Judges To Determine Whether
            ACCA Predicate Offenses Were Committed On Different
            Occasions Is Clearly Irreconcilable With *Wooden*. ...........................18

      D.    The Constitutional Error In Mr. Patterson's Case Requires A
            Resentencing Without The ACCA Enhancement...............................19

II.    The ACCA Sentence Was Unlawful Because Mr. Patterson's Prior Convictions For Oregon Assault III And Oregon Strangulation Are Not Violent Felonies...........................................................22

    A.    Standard Of Review ...............................................22

    B.    After *Borden*, An Offense Qualifies As A Violent Felony Under The ACCA's Force Clause Only If It Requires The Intentional Or Knowing Use Of Violent Physical Force Consciously Directed At Another Person. ...............................22

    C.    Mr. Patterson's Oregon Assault III Conviction Does Not Qualify As A Violent Felony. ..........................................26

        1.    The State's Applicable Accomplice Liability Standard Does Not Require The Intentional Or Knowing Use Of Force...........................................................26

        2.    The State Defines Causing Physical Injury To Include Nonviolent Conduct That Is "Extensively Intertwined" With Another Person's Causation of Physical Injury..............30

        3.    The State Law Does Not Require Any Intentional Or Knowing Use Of Force Within The Meaning Of Borden. .......32

    D.    Mr. Patterson's Oregon Strangulation Conviction Does Not Qualify As A Violent Felony. ...................................33

    E.    The District Court's Finding That The 2014 Strangulation Counts Were "Separate Temporally" Failed To Satisfy The Different-Occasions Element Under *Wooden*......................35

Conclusion ......................................................................36

ii

**Table of Authorities**

**Supreme Court Opinions**

*Alleyne v United States*,
570 U.S. 99 (2013) ................................................................ 14

*Almendarez-Torres v United States*,
523 U.S. 224 (1998) ............................................................. 14

*Apprendi v New Jersey*,
530 U.S. 466 (2000) ......................................................... 1, 13

*Borden v United States*,
141 S. Ct. 1817 (2021) ............................... 2, 22, 23, 24, 25, 31, 33

*Descamps v United States*,
570 U.S. 254 (2013) ................................................. 16, 17, 29

*Johnson v United States*,
559 U.S. 133 (2010) ................................................... 2-3, 23

*Johnson v United States*,
576 U.S. 591 (2015) ............................................................. 6

*Jones v United States*,
526 U.S. 227 (1999) ....................................................... 13, 14

*Mathis v United States*,
579 U.S. 500 (2016) ........................................ 1, 17, 23, 29, 30, 4

*Pereida v Wilkinson*,
141 S. Ct. 754 (2021) ......................................................... 17

*Taylor v United States*,
495 U.S. 575 (1990) ........................................................... 23

*United States v Bailey*,
444 U.S. 394 (1980) ........................................................... 24

*United States v Stitt*,
139 S. Ct. 399 (2018) ......................................................... 18

*Wooden v United States*,
    142 S. Ct. 1063 (2022) ............................................. 14, 15, 16, 17, 19, 25, 36, 4

## Federal Court Opinions

*Flores-Vega v Barr*,
    932 F.3d 878 (9th Cir. 2019) ............................................................. 34

*Miller v Gammie*,
    335 F.3d 889 (9th Cir. 2003) ............................................................. 19

*Somers v United States*,
    15 F.4th 1049 (11th Cir. 2021) ......................................................... 25

*Tristan v* United States, No. 6:13-CR-00542-AA, 2018 WL 3117637, (D. Or. June 25, 2018) ............................................................................................. 27

United States *v Man*,
    No. 21-10241, 2022 WL 17260489, (9th Cir. Nov. 29, 2022) ........................ 18

*United States v Collazo*,
    984 F.3d 1308 (9th Cir. 2021) ........................................................... 21

*United States v Dominguez-Maroyoqui*,
    748 F.3d 918 (9th Cir. 2014) ............................................................. 32

*United States v Dudley*,
    5 F.4th 1249 (11th Cir. 2021) ........................................................... 17

*United States v Fultz*,
    923 F.3d 1192 (9th Cir. 2019) ........................................................... 23

*United States v Grisel*,
    488 F.3d 844 (9th Cir. 2007) ............................................................. 18

*United States v Guerrero-Jasso*,
    752 F.3d 1186 (9th Cir. 2014) ........................................................... 20

*United States v Jordan*,
    291 F.3d 1091 (9th Cir. 2002) ........................................................... 21

*United States v Lucero*,
    989 F.3d 1088 (9th Cir. 2021) ........................................................... 20

iv

*United States v Maxey*,
   989 F.2d 303 (9th Cir. 1993) ............................................................... 18

*United States v Parnell*,
   818 F.3d 974 (9th Cir. 2016) ............................................................... 22

*United States v Perry*,
   908 F.3d 1126 (8th Cir. 2018) .............................................................. 18

*United States v Sanchez*,
   13 F.4th 1063 (10th Cir. 2021) ............................................................ 25

*United States v Thomas*,
   355 F.3d 1191 (9th Cir. 2004) .............................................................. 21

*United States v Thompson*,
   421 F.3d 278 (4th Cir. 2005) ................................................................ 18

*United States v Tighe*,
   266 F.3d 1187 (9th Cir. 2001) .............................................................. 21

*United States v Walker*,
   953 F.3d 577 (9th Cir. 2020) ...................................................... 13, 18, 19

*Young v Holder*,
   697 F.3d 976 (9th Cir. 2012) ............................................................... 29

## United States Code

18 U.S.C. § 16 ........................................................................................ 34

18 U.S.C. § 922 ................................................................... 1, 12, 20, 5, 8

18 U.S.C. § 924 ............................................................ 1, 10, 12, 2, 22, 5, 8

18 U.S.C. § 3231 .................................................................................... 4

28 U.S.C. § 1291 .................................................................................... 4

v

**State Cases**

*Hale v Belleque*,
   298 P.3d 596 (Or. Ct. App. 2013) ....................................................... 28

*State v Barnes*,
   986 P.2d 1160 (Or. 1999) .......................................................... 32, 33

*State v Blake*,
   228 P.3d 560 (Or. 2010) .................................................................. 30

*State v Burgess*,
   251 P.3d 765 (Or. Ct. App. 2011) ................................................... 30

*State v Burney*,
   82 P.3d 164 (Or. Ct. App. 2003) ............................................... 27, 29

*State v English*,
   343 P.3d 1286 (Or. Ct. App. 2015) ................................................. 32

*State v Hendricks*,
   359 P.3d 294 (Or. Ct. App. 2015) ................................................... 32

*State v Kaylor*,
   289 P.3d 290 (Or. Ct. App. 2012) ................................................... 34

*State v Lopez-Minjarez*,
   260 P.3d 439 (Or. 2011) ........................................................... 27, 28

*State v Phillips*,
   255 P.3d 587 (Or. Ct. App. 2011) ................................................... 30

*State v Phillips*,
   317 P.3d 236 (Or. 2013) ........................................................... 30, 31

*State v Pine*,
   82 P.3d 130 (Or. 2003) .................................................................. 31

*State v Ryder*,
   340 P.3d 663 (Or. Ct. App. 2014) ................................................... 31

**State Statutes**

Or. Rev. Stat. § 163.165 ................................................... 26, 27, 31, 32, 4

Or. Rev. Stat. § 163.187 ...................................................... 33, 35, 4, 6, 7

**Rules**

Fed. R. App. P. 4 .............................................................................. 4

## INTRODUCTION AND SUMMARY OF ARGUMENT

Appellant James Patterson pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), an offense with a 10-year statutory maximum prison term. The district court, however, imposed a mandatory-minimum 15-year sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), based on its finding that Mr. Patterson had three prior convictions for "violent felonies" that were "committed on occasions different from one another."

This Court should hold that the district court's imposition of an enhanced ACCA sentence violated Mr. Patterson's Fifth and Sixth Amendment rights. *Apprendi v New Jersey*, 530 U.S. 466, 490 (2000), and its progeny, any fact other than the fact of a prior conviction that results in an elevated statutory maximum or minimum sentence must be charged in the indictment and found by the jury (or admitted by a defendant who pleads guilty). Although the *Apprendi* rule allows a carve-out for prior convictions, that exception is narrow and reaches only "the simple fact of a prior conviction." *Mathis v United States*, 579 U.S. 500, 511 (2016). It does not allow judicial fact finding about how the prior offense was committed. *Id.*

In *Wooden v. United States*, the Supreme Court held that the determination under the ACCA of whether prior convictions occurred on different occasions entails

1

a complex, "multi-factored" test, which requires examining the timing of the offense conduct, the presence of "significant intervening events," "[p]roximity of location," "the character and relationship of the offenses," and whether there is "a common scheme or purpose," among other factors. 142 S. Ct. 1063, 1070-71 (2022). As the government now concedes, the wide-ranging factual inquiry described in *Wooden* does not fall within the narrow *Apprendi* exception for the simple fact of a prior conviction.

Accordingly, following *Wooden*, judges cannot impose an ACCA sentence unless the different-occasions element is charged in the indictment and found by a jury beyond a reasonable doubt or admitted by the defendant. Here, the indictment did not charge, and Mr. Patterson did not admit, that he committed three violent felonies "on occasions different from one another." Thus, the district court violated his Fifth and Sixth Amendment rights by making the different-occasions finding at sentencing.

The district court also erred in holding that Mr. Patterson's prior convictions for Oregon Assault III and Oregon Strangulation were violent felonies under the force clause in 18 U.S.C. § 924(e)(2)(B)(i). The force clause standard announced by the Supreme Court in *Borden v United States*, 141 S. Ct. 1817 (2021), requires a knowing or purposeful use of force targeted at another person. The force must be

2

violent in nature; offensive physical touching does not suffice. *Johnson v United States*, 559 U.S. 133, 140 (2010). Neither Oregon Assault III nor Oregon Strangulation meets that standard

First, Oregon Assault III is not a violent felony under the ACCA's force clause. When Mr. Patterson was convicted, the state's accomplice liability standard did not require the defendant to knowingly or intentionally aid an assault. And even when committed as a principal, the state has broadly construed the statute's terms to include nonviolent conduct that does not directly cause injury, as well as conduct that causes injury merely recklessly or negligently.

Further, Oregon Strangulation is not a violent felony because it encompasses nonviolent conduct given that, by its terms, it applies to any obstruction of breathing no matter how slight or fleeting, that is not capable of causing physical harm.

Accordingly, this Court should vacate Mr. Patterson's sentence, and remand for resentencing without the ACCA enhancement.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over the underlying criminal prosecution pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

The district court entered judgment on May 24, 2022, ER-4, and Mr. Patterson filed a timely notice of appeal on May 26, 2022. ER-243. Fed. R. App. P. 4 (b)(1)(A)(i).

## STATEMENT OF ISSUES

I. In light of the Supreme Court's decision in *Wooden v United States*, 142 S. Ct. 1063, 1070-71 (2022), does the ACCA's different-occasions element go beyond "the simple fact of a prior conviction," *Mathis v. United States*, 579 U.S. 500, 511 (2016), such that the element must be alleged in the indictment and either found by a jury beyond a reasonable doubt or admitted as part of a guilty plea?

II. Is Oregon Assault III under Or. Rev. Stat. § 163.165(1)(e), a violent felony under the ACCA's force clause?

III. Is Oregon Strangulation under Or. Rev. Stat. § 163.187(1), a violent felony under the ACCA's force clause?

## PERTINENT STATUTORY PROVISIONS

<u>Armed Career Criminal Act</u>

In 18 U.S.C. § 924(e), Congress prescribed a greater mandatory minimum and statutory maximum sentence for certain firearms offenders with prior convictions for a "violent felony" or a "serious drug offense." The statute sets out the criteria for its application and defines "violent felony" as follows:

> (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

> (2) As used in this subsection--

> * * * * *

>> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

>>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

>>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e).

The "residual clause" of the violent felony definition, which includes any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" has been struck down as unconstitutionally vague. *Johnson v United States*, 576 U.S. 591, 597 (2015).

Oregon Assault in the Third Degree

Or. Rev. Stat. § 163.165(1)(e) provides, in relevant part:

(1) A person commits the crime of assault in the third degree if the person:

\*\*\*\*\*

> (e) While being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]

*Id.*

Oregon Strangulation

Or. Rev. Stat. § 163.187 provides, in relevant part:

(1) A person commits the crime of strangulation if the person knowingly impedes the normal breathing or circulation of the blood of another person by:

> (a) Applying pressure on the throat, neck or chest of the other person; or

> (b) Blocking the nose or mouth of the other person.

(2) Subsection (1) of this section does not apply to legitimate medical or dental procedures or good faith practices of a religious belief.

(3) Strangulation is a Class A misdemeanor.

6

(4) Notwithstanding subsection (3) of this section, strangulation is a Class C felony if:

\*\*\*\*\*

> (f) The person has at least three previous convictions for violating this section or [for five listed assault and menacing statutes] or for committing an equivalent crime in another jurisdiction, in any combination[.]

*Id.*

7

## STATEMENT OF THE CASE

**Nature Of The Case**

This is a direct appeal from the imposition of the Armed Career Criminal Act's mandatory minimum 15-year sentence, entered on May 24, 2022, by the Honorable Ann L. Aiken, United States District Judge for the District of Oregon.

**Relevant Factual History And Course Of Proceedings**

On August 7, 2019, a federal grand jury charged Mr. Patterson in a single-count superseding indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). ER-229-30. The superseding indictment alleged that Mr. Patterson had previously been convicted of several listed crimes "punishable by imprisonment for a term exceeding one year." ER-229. But it did not allege that he had three prior convictions for violent felonies or serious drug offenses that had been committed on different occasions. ER-229-30. The superseding indictment contained no reference to the ACCA, 18 U.S.C. § 924(e). *Id.*

At a change of plea hearing on December 9, 2019, Mr. Patterson entered a guilty plea to the sole charge pursuant to a plea agreement with the government. ER-211 (change of plea transcript); ER-223 (plea agreement). Mr. Patterson admitted the elements required to violate 18 U.S.C. § 922(g) – that he unlawfully possessed a firearm and ammunition that had previously been transported in interstate

commerce, after having been convicted of a crime punishable by more than one year of imprisonment. ER-221, 224-25 (¶ 6). But he did not admit any specific prior convictions, nor did he admit that he had three or more violent felonies or serious drug offenses that had been committed on different occasions. ER-219 (government's summary of offense elements); ER-221 (defendant's factual admissions). He expressly reserved his right to oppose the ACCA enhancement and to appeal any adverse determination. ER-219.

Before sentencing, the parties submitted extensive written memoranda disputing whether the defendant's prior convictions qualified as violent felonies. ER-62 (Defendant's Response); ER-76 (Government's Supplemental Sentencing Memorandum); ER-100 (Government's Sentencing Memorandum); ER-144 (Defendant's Sentencing Memorandum). The arguments centered on three criminal dockets, two of which encompassed multiple counts of conviction:

- 2017 – Jackson County Circuit Court Case Number 17CR41705, convicting the defendant of one count of Strangulation and one count of Assault IV;

- 2014 – Jackson County Circuit Court Case Number 14CR00307, convicting the defendant of two counts of Strangulation and one count of Attempted Assault I; and

- 1996 – Jackson County Circuit Court Case Number 95-5188-C-3, convicting the defendant of one count of Assault III.

*See* PSR-45, 59, 60.

9

In its written briefing, the government argued that each conviction in those three dockets, except the Assault IV counts from 2014, qualified as ACCA violent felonies. ER-104-109.[1] Relying on pre-*Wooden* circuit precedent, the government argued that the two strangulation counts and the attempted assault count in the 2014 docket should each be counted separately because they were "all temporally distinct." ER-106-07; *see also* ER-83 ("Defendant twice strangled the same victim on the same day. The indictment specified that each count of strangulation was 'a separate and distinct act' from the other."). At the sentencing hearing, the government focused its argument on just four of Mr. Patterson's prior convictions: the 1996 conviction for Assault III, the two 2014 convictions for Strangulation, and the 2017 conviction for Strangulation. ER-17-21.

Mr. Patterson, by contrast, argued that none of the offenses qualified as a categorical match to the force clause in 18 U.S.C. § 924(e)(2)(B)(i). ER-63-72, 73-74, 152-190. He also argued that the court could not find the separate counts of conviction from the 2014 docket were committed on separate occasions. ER-72-73. Specifically, he argued that the facts put forth by the government as supporting the different-occasions finding were not elements of the prior convictions that could be

---

[1] The government acknowledged precedent contradicting its position regarding the Attempted Assault I and Assault IV convictions. ER-108.

ascertained through the conviction record based on a permissible application of the modified categorical approach: "[T]he actual judgment of conviction contains no similar language [defining the offenses as separate and distinct] and it is unclear on what basis Mr. Patterson was convicted by the jury and whether his conduct matched the allegation in the indictment." ER-73.

Although the defendant did not specifically assert that the separate occasions decision must be made by a jury rather than a judge under *Apprendi*, the defendant repeatedly asserted that judicial fact finding under the categorical and modified categorical approaches extends only to determining the offense of conviction. ER-23 ("[B]ut the Supreme Court has informed us that when you're analyzing predicate offenses, what's important is convictions, not conduct"); ER-25 ("Again, you can't consider what you believe that he actually did, but only what the statute required and what he admitted to."); ER-28 (arguing that reference to plea documents is limited to divisible statutes, "[a]nd if it's a divisible statute, you only get to use those documents to determine which portion of the divisible statute was violated.").

At sentencing, the district court found that the ACCA applied and concluded that Mr. Patterson had four qualifying violent felony convictions—the same ones specified by the government. ER-37-38. The district court found the two 2014

11

convictions for Strangulation to be "separate temporally." ER-38. The court then imposed the mandatory minimum sentence of 15 years in prison. ER-5, 51.

**Custody Status**

Mr. Patterson is in the custody of the Bureau of Prisons at USP Victorville. He is presently serving a 180-month sentence with a projected release date of July 22, 2034.

## ARGUMENT

## I. Sentencing Mr. Patterson To The ACCA's Enhanced Statutory Minimum Violated His Fifth And Sixth Amendment Rights.

Under the ACCA, a defendant convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), is subject to a mandatory minimum sentence of 15 years, and a maximum sentence of life, if the defendant has three or more "previous convictions . . . for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*." 18 U.S.C. § 924 (e)(1) (emphasis added). Without the ACCA, a violation of section 922(g) was punishable by a maximum prison sentence of 10 years, with no minimum, when Mr. Patterson's offense occurred. *See former* 18 U.S.C. § 924(a)(2).[2]

---

[2] A later statutory amendment increased the maximum sentence for violating 18 U.S.C. §§ 922(g) to 15 years. *See* 18 U.S.C. § 924 (a)(8) (2023).

12

The Supreme Court's precedent establishes that the ACCA's different-occasions element requires factfinding subject to the procedural protections of *Apprendi*, 530 U.S. 466, meaning that it must be charged in the indictment and either found by a jury at trial or admitted by the defendant. Because that did not occur here, Mr. Patterson's ACCA sentence was imposed in violation of his Fifth and Sixth Amendment rights. This Court should vacate Mr. Patterson's sentence and remand for resentencing without the unconstitutional ACCA enhancement.

### A.   Standard of Review

This Court reviews de novo whether the district court violated a defendant's Sixth Amendment rights at sentencing. *See United States v Walker*, 953 F.3d 577, 578 n.1 (9th Cir. 2020).

### B.   Fact finding Under The ACCA's Occasions Clause Is Subject To The Procedural Protections Of The Fifth And Sixth Amendments.

"[T]he Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment" create an important set of procedural protections for criminal defendants. *Jones v United States*, 526 U.S. 227, 243 n.6 (1999). Under those protections, any fact "that increases the maximum penalty for a crime," other than the fact of a prior conviction, "must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476 (citation omitted). The only "narrow exception to this general rule," based on

13

*Almendarez-Torres v United States*, 523 U.S. 224, 247 (1998), is for "the fact of a prior conviction." *Alleyne v United States*, 570 U.S. 99, 111 n.1 (2013).

Prior convictions are "potentially distinguishable" from other facts for constitutional purposes because, "unlike virtually any other consideration used to enlarge the possible penalty for an offense, . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Jones*, 526 U.S. at 249. But for the same reason, the prior conviction exception is narrow; it reaches only the fact of the conviction itself and the elements of the offense. *See, e.g., Mathis*, 579 U.S. at 511("This Court has held that only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction."). The exception does not apply to facts about the nature of the defendant's conduct: "[A] judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense." *Id.* (citing *Shepard v United States*, 544 U.S. 13, 25 (2005)).

As construed in *Wooden v. United States*, the ACCA's different-occasions finding does not fall within the exception for prior convictions because it requires a robust fact finding "inquiry" that is "multi-factored in nature." 142 S. Ct. 1063, 1070 (2022). In *Wooden*, the defendant had burglarized ten units in a single storage facility

14

on a single night and pleaded guilty to ten counts of felony burglary in violation of Georgia law. *See id.* at 1067-68. The Sixth Circuit held that because each burglary of each storage unit occurred sequentially, one after another at different points in time, they were committed on different occasions. *Id.* at 1068. The Supreme Court unanimously reversed.

Looking to the ordinary meaning of the word "occasion" as "essentially an episode or event," the Court concluded that Wooden's sequence of burglaries comprised a single occasion, not ten. *See id.* at 1069-70. The Court explained that, when applying the occasions clause, the factfinder must consider "a range of circumstances [that] may be relevant to identifying episodes of criminal activity." *Id.* at 1070-71. The Court provided a non-exhaustive description of circumstances that might be relevant to the inquiry:

- "Timing of course matters, though not in the split-second, elements-based way the Government proposes. Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion[.]"

- The presence of "significant intervening events" during the criminal conduct is relevant.

- "Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event."

- "And the character and relationship of the offenses may make a difference:  The more similar or intertwined the conduct giving

15

rise to the offenses—the more, for example, they share a
common scheme or purpose—the more apt they are to compose
one occasion."

*Id.* at 1071; *see also id.* at 1079-80 (Gorsuch, J., concurring in the judgment) (noting

that "the potentially relevant factors" identified by the majority "turn out to be many

and disparate" and that "even this long list of factors probably is not exhaustive").

The *Wooden* Court declined to address the constitutional implications of the

opinion—"whether the Sixth Amendment requires that a jury, rather than a judge,

resolve whether prior crimes occurred on a single occasion"—because *Wooden* did

not raise that issue. *Id.* at 1068 n.3. However, the complex, multi-factor inquiry

called for under *Wooden* patently goes beyond determining the "simple fact of a

prior conviction."

The Supreme Court's ACCA jurisprudence confirms this point. In *Descamps*

*v. United States*, for example, the Court shot down an approach that would have

allowed sentencing courts to scrutinize a defendant's *Shepard* documents to

determine the factual basis for a plea. *Descamps v United States*, 570 U.S. 254

(2013). As the Court explained, the prior conviction exception does not authorize

the sentencing court "to try to discern what a trial showed, or a plea proceeding

revealed, about the defendant's underlying conduct." *Id.* at 269. Those facts

"properly belong to juries." *Id.* at 267. The "only facts" that a sentencing court can

16

find about a prior conviction "are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances" that a defendant had little incentive to dispute. *Id.* at 269-70; *see also Mathis*, 579 U.S. 512, 512-11 (any inquiry into the "alternative factual scenarios" underlying a prior conviction is one that must "remain off-limits to judges imposing ACCA enhancements"); *Pereida v Wilkinson*, 141 S. Ct. 754, 765 (2021) ("[T]he who, what, when, and where of a conviction" all "pose questions of fact.").

Indeed, Justice Gorsuch (joined by Justice Sotomayor) in a concurring opinion in *Wooden* recognized that the unwieldy nature of the majority's "multi-factor balancing test" raised a "simmering" Sixth Amendment issue:

> A constitutional question simmers beneath the surface of today's case. The Fifth and Sixth Amendments generally require the government in criminal cases to prove every fact essential to an individual's punishment to a jury beyond a reasonable doubt. In this case, however, only judges found the facts relevant to Mr. Wooden's punishment under the Occasions Clause, and they did so under only a preponderance of the evidence standard.

142 S. Ct. at 1087 n.12 (citation omitted). Justice Gorsuch had "little doubt" that the Supreme Court would soon have to address the question, and cited three circuit judges who had already questioned the different-occasions clause's amenability to judicial fact finding. *Id.* at 1087 n.12 (Gorsuch, J., concurring) (citing *United States v Dudley*, 5 F.4th 1249, 1273-78 (11th Cir. 2021) (Newsom, J., concurring in part

17

and dissenting in part); *United States v Perry*, 908 F.3d 1126, 1134-36 (8th Cir. 2018) (Stras, J., concurring); *United States v Thompson*, 421 F.3d 278, 287-95 (4th Cir. 2005) (Wilkins, C.J., dissenting)).

Following *Wooden*, the government now concedes that different occasions must be found by a jury, not a judge. *See, e.g.*, *United States v Man*, No. 21-10241, 2022 WL 17260489, at *1 (9th Cir. Nov. 29, 2022) ("[T]he Government concedes that following *Wooden* . . . a jury must find, or a defendant must admit, that a defendant's ACCA predicate offenses were committed on different occasions.").

**C.    This Court's Precedent Allowing Judges To Determine Whether ACCA Predicate Offenses Were Committed On Different Occasions Is Clearly Irreconcilable With *Wooden*.**

Before *Wooden*, this Court deemed offenses as separate ACCA predicates so long as they were "temporally distinct . . . even if committed within hours of each other, similar in nature, and consolidated for trial or sentencing." *United States v Maxey*, 989 F.2d 303, 306 (9th Cir. 1993). Under that bright-line standard, the Court held that the different-occasions inquiry fell into the narrow *Apprendi* exception for the "fact of a prior conviction" and could thus be found by a judge. *See Walker*, 953 F.3d at 850-82; *United States v Grisel*, 488 F.3d 844, 846-47 (9th Cir. 2007) (en banc), *abrogated in part on other grounds by United States v Stitt*, 139 S. Ct. 399 (2018). In both *Walker* and *Grisel*, the Court reasoned that because "'the date of the

offense' is a fact determinable on 'the face of the document demonstrating Defendant's prior conviction,'" and because "the date of the offense is intimately connected with the fact of a prior conviction," the different-occasions inquiry fell within *Apprendi*'s exception for the "fact" of prior convictions. *Walker*, 953 F.3d at 580 (quoting *Grisel*, 488 F.3d at 847).

*Walker* and *Grisel* are no longer good law because their reasoning is clearly irreconcilable with *Wooden*. *See Miller v Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding circuit precedent non-binding when "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable"). *Wooden* made clear that the different-occasions analysis requires a multi-factor inquiry that goes far beyond simply determining the date of the offense alone. *See* 142 S. Ct. at 1070-71. Accordingly, this Court is no longer bound by *Walker* and *Grisel*.

### D. The Constitutional Error In Mr. Patterson's Case Requires A Resentencing Without The ACCA Enhancement

Here, the district court's decision to impose an ACCA sentence violated Mr. Patterson's constitutional rights under the Fifth and Sixth Amendments. The indictment did not allege the different-occasions element, did not allege that Mr. Patterson had three prior violent-felony convictions for offenses committed on different occasions, and did not cite the ACCA or otherwise assert that Mr. Patterson

19

would be subject to its enhanced penalties. ER-229-30. Likewise, when Mr. Patterson pleaded guilty, he admitted only the elements of the 18 U.S.C. § 922(g) offense alleged in the indictment. ER-221. He did not admit facts supporting the different-occasions element as part of his plea. The district court's finding of the relevant facts at sentencing constituted a constructive amendment of the indictment and violated Mr. Patterson's Fifth and Sixth Amendment rights.

The government cannot show that these constitutional errors were harmless beyond a reasonable doubt. *See United States v Guerrero-Jasso*, 752 F.3d 1186, 1193 (9th Cir. 2014) (setting out harmless error standard for *Apprendi* error); *United States v Lucero*, 989 F.3d 1088, 1100 (9th Cir. 2021) (imposing the burden of establishing harmlessness on the government). For an *Apprendi* error to be deemed harmless beyond a reasonable doubt, the evidence of harmlessness must be both "overwhelming" and "uncontroverted." *See Guerrero-Jasso*, 752 F.3d at 1193-94 (citation omitted).

The *Apprendi* error here was not harmless because Mr. Patterson received a 15-year sentence, in excess of the otherwise applicable statutory maximum of 10 years. *See, e.g.,* See, e.g., *United States v Banuelos*, 322 F.3d 700, 706 (9th Cir. 2003), overruled on other grounds *Collazo*, 984 F.3d 1308 (en banc) ("Because the court actually imposed a sentence of 10 years—far greater than the permissible five

20

year maximum—the *Apprendi* error was not harmless beyond a reasonable doubt."), o*verruled on other grounds by United States v Collazo*, 984 F.3d 1308 (9th Cir. 2021) (en banc) ("Because the court actually imposed a sentence of 10 years—far greater than the permissible five year maximum—the *Apprendi* error was not harmless beyond a reasonable doubt.").

Indeed, in exactly this context, this Court held that an *Apprendi* error in finding facts about a defendant's prior juvenile adjudication to support an ACCA sentence was not harmless because the 15-year sentence exceeded the otherwise-applicable 10-year statutory maximum. *See United States v Tighe*, 266 F.3d 1187, 1195 (9th Cir. 2001); *United States v Jordan*, 291 F.3d 1091, 1097 (9th Cir. 2002) ("[W]hen *Apprendi* error occurs because a material fact that increases the maximum sentence was neither alleged in the indictment nor submitted to the jury, the error must be corrected if the sentence issued is greater than what the defendant could have received had the district court issued consecutive sentences on offenses where the material fact is not needed.").

The appropriate remedy is to vacate Mr. Patterson's ACCA sentence and remand for resentencing consistent with the statutory penalties for the non-ACCA § 922(g) offense to which he pled guilty. *United States v Thomas*, 355 F.3d 1191, 1202 (9th Cir. 2004) ("[B]ecause Thomas challenged only his sentence, and not his

conviction, we must remand with instructions to resentence Thomas based on an unspecified quantity of cocaine base.").

## II. The ACCA Sentence Was Unlawful Because Mr. Patterson's Prior Convictions For Oregon Assault III And Oregon Strangulation Are Not Violent Felonies.

Aside from the *Apprendi* error, Mr. Patterson's ACCA sentence must be vacated because his prior convictions for Oregon Assault III and Oregon Strangulation were not violent felonies under a proper application of the categorical approach and the force-clause standard articulated in *Borden*, 141 S. Ct. 1817.

### A. Standard Of Review

This Court reviews de novo a district court's determination that a conviction is a violent felony under the Armed Career Criminal Act *United States v Parnell*, 818 F.3d 974, 978 (9th Cir. 2016).

### B. After *Borden*, An Offense Qualifies As A Violent Felony Under The ACCA's Force Clause Only If It Requires The Intentional Or Knowing Use Of Violent Physical Force Consciously Directed At Another Person.

Under the ACCA, a prior offense qualifies as a "violent felony" if it is punishable by imprisonment for a term exceeding one year, and the offense either (1) has "as an element the use, attempted use, or threatened use of physical force," or (2) matches one of the enumerated offenses of burglary, arson, extortion, or the use of explosives, 18 U.S.C. § 924(e)(2)(B)(i)-(ii).

22

Only the first category, known as the "elements clause" or the "force clause,"[3] is relevant here. To determine whether an offense qualifies as a violent felony under the force clause, courts employ the categorical approach. *Mathis*, 579 U.S. 504, 504; *Taylor v United States*, 495 U.S. 575, 600-01 (1990). "Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant. The focus is instead on whether the elements of the statute of conviction meet the federal standard." *Borden*, 141 S. Ct. at 1822. "If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate." *Id.*

At a minimum, the force clause requires that the physical force used must be "*violent* force," meaning force that is "capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Mere offensive touching is not "physical force" under this clause. *Id.* at 139.

Furthermore, the use of force must be intentional or knowing and directed at another person. *Borden*, 141 S. Ct. at 1825. In *Borden*, the Supreme Court held that a defendant's prior offense does not satisfy the force clause "if it requires only a *mens rea* of recklessness—a less culpable mental state than purpose or knowledge."

---

[3] *See, e.g., United States v Fultz,* 923 F.3d 1192, 1194 n.1 (9th Cir. 2019).

23

141 S. Ct. at 1821-23 (plurality opinion). The Court adopted the Model Penal Code's classification of four mental states "in descending order of culpability: purpose, knowledge, recklessness, and negligence," as the relevant generic federal definition under the categorical approach. *See id*. at 1823. Under those definitions, the line between knowing and reckless conduct depends on a person's awareness of the likely results of his or her conduct. *Id.* at 1823. To act knowingly means that the individual "'is aware that [a] result *is practically certain* to follow from his conduct,' whatever his affirmative desire." *United States v Bailey*, 444 U.S. 394, 404 (1980). Conduct is merely reckless "when [the individual] 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards." *Id.* at 1824 (quoting Model Penal Code § 2.02(2)(c)).

For purposes of the force clause, "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual," precluding crimes of recklessness. *Borden*, 141 S. Ct. at 1825. Thus, to satisfy the force clause under *Borden*, offenses must entail "a deliberate choice of wreaking harm on another, rather than mere indifference to risk." *Id.* at 1830; *accord id.* at 1835 (Thomas, J., concurring) (concluding that the elements clause applies only to offenses that criminalize conduct "designed to cause harm" to another person). An individual who does not intend the resulting harm from

24

his conduct but rather "pay[s] insufficient attention to the potential application of force" has not engaged in conduct that is "opposed to or directed at another" for purposes of the force clause. *Id.* at 1827 (plurality opinion).

Applying that standard, the Court in *Borden* ultimately concluded that Tennessee's aggravated assault statute, which covers recklessly causing a serious bodily injury to another, was not a violent felony under the ACCA. *See id.* at 1822.

Both the Tenth and Eleventh Circuits agree that *Borden* announced a rule requiring force consciously directed, targeted, or aimed at another person. *See United States v Sanchez*, 13 F.4th 1063, 1078-79 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 842 (2022) (requiring, under *Borden*, conduct that is "directed" or "targeted" at another person to satisfy the elements clause); *see also Somers v United States*, 15 F.4th 1049, 1053 (11th Cir. 2021) (same). In *Somers*, the Eleventh Circuit elaborated: "[T]he elements clause requires both the general intent to volitionally take the action of using, attempting to use, or threating to use force and something more: that the defendant direct the action at a target, namely another person." *Id*.

In this case, neither Oregon Assault III nor Oregon Strangulation is a categorical match for the force clause after *Borden* because the crimes do not require the knowing or intentional use of violent physical force. The invalidity of any one of the prior convictions is sufficient to render the ACCA sentence unlawful because,

25

setting aside any constitutional error, the district court's conclusion that the 2014 Strangulation counts were "separate temporally" failed under *Wooden*'s interpretation of the different-occasions clause.

### C. Mr. Patterson's Oregon Assault III Conviction Does Not Qualify As A Violent Felony.

Mr. Patterson's 1996 conviction for Oregon Assault III does not qualify as a violent felony for three interrelated reasons. First, through its former aiding and abetting standard, Oregon law permitted a conviction for any offense that was the "natural or probable consequence" of an intended crime; thus, when committed as an accomplice, it did not require that a defendant either intentionally or knowingly abet an assault. Second, even when committed as a principal, the state law reaches conduct that does not directly cause injury, but that is "extensively intertwined" with injury caused by another. Third, the statute can be satisfied by offensive touching that does not rise to the level of violent physical force but that recklessly or negligently results in injury, contrary to the *mens rea* standard articulated in *Borden*.

> ### 1. The State's Applicable Accomplice Liability Standard Does Not Require The Intentional Or Knowing Use Of Force.

By its terms, Oregon Assault III as set out in Or. Rev. Stat. § 163.165(1)(e) requires that a defendant, "[w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]" In Jackson County

26

Case. No. 95-5188-C-3, Mr. Patterson was charged in Count 2 with "unlawfully and knowingly, while being aided by another person actually present, caus[ing] physical injury to [redacted] by striking [redacted] with a shotgun[.]" ER-115.[4] Although the indictment did not specifically allege that Mr. Patterson committed the offense as an accomplice, aiding and abetting liability is implicitly included in every criminal charge as a matter of Oregon law. *State v Burney*, 82 P.3d 164, 168 (Or. Ct. App. 2003) ("[O]ne who is indicted as a principal may be convicted on proof that he or she aided and abetted in the commission of the crime.").

If committed as an accomplice, state law at the time of Mr. Patterson's prosecution in 1996 would not sustain the Assault III conviction as a violent felony because the state allowed a "natural and probable consequences" theory of accomplice liability. That theory permitted a conviction without proof that the defendant aided the assault intentionally or knowingly. *State v Lopez-Minjarez*, 260 P.3d 439, 442-43 (Or. 2011); *see Tristan v United States*, No. 6:13-CR-00542-AA, 2018 WL 3117637, at *7-8 (D. Or. June 25, 2018)(holding the defendant's prior conviction for Oregon Assault II was not a "violent felony" under the ACCA because the state accomplice liability standard included a mens rea of mere negligence).

---

[4] For purposes of this case, Mr. Patterson does not challenge the conclusion that the subsections of Or. Rev. Stat. § 163.165(1) are divisible and that his conviction was under subsection (1)(e).

27

As explained in *Lopez-Minjarez*, the state's standard jury instructions used up until 2011 advised the jury "that a person who aids and abets in the commission of a crime, *in addition* to being criminally responsible for that crime, *also* is criminally responsible for 'any act or other crime' that was the 'natural and probable consequence' of the intended crime." 260 P.3d at 442-43 (quoting Uniform Criminal Jury Instruction 1051). Thus, "criminal responsibility attache[d] under the instruction for any naturally consequential crime, without regard to whether the defendant acted with the intent" to facilitate that crime. *Id.* Although *Lopez-Minjarez* rejected the "natural and probable consequences" theory as inconsistent with the controlling statute, *id.*, it was a "correct statement of the law" up until that decision, *Hale v Belleque*, 298 P.3d 596, 618 (Or. Ct. App. 2013), including in 1996 when Mr. Patterson was convicted of Assault III in 1996.

The district court below skipped over the problem with Oregon's former accomplice liability standard and instead concluded that, under the modified categorical approach, Mr. Patterson was necessarily convicted as a principal. That conclusion was in error both because it is not supported by the conviction record under the modified categorical approach and because the modified categorical approach was legally unavailable.

28

First, the conviction record does not prove beyond a reasonable doubt that Mr. Patterson was convicted as a principal rather than as an accomplice. The indictment itself does nothing to narrow the offense charged, because accomplice liability is implicitly included by Oregon law in every charging document: "[O]ne who is indicted as a principal may be convicted on proof that he or she aided and abetted in the commission of the crime." *Burney*, 82 P.3d at 168. And Mr. Patterson's plea petition does not establish that he pleaded guilty on a narrower ground than was included in the overbroad charging instrument because he merely admitted to the offense as charged, tracking the wording of the statute. ER-113 (admitting as factual basis for his plea, "I caused physical injury to [redacted] while aided by another person"); *see Young v. Holder*, 697 F.3d 976, 986 (9th Cir. 2012) (holding that a guilty plea to a conjunctively phrased charging document establishes a conviction under one of the theories charged, "but not necessarily all of them").

In any event, the district court should not have reached the modified categorical approach because liability as a principal was not divisible from liability as an accomplice under state law until 2013. The modified categorical approach is available only for a divisible offense, *Descamp*s, 570 U.S. at 258, and an offense is divisible only if it includes alternative offense elements on which the members of the jury must agree to secure a conviction. *Mathis*, 579 U.S. 517, 517-18. The

29

modified categorical approach remains off-limits unless state law "speak[s] plainly" as to divisibility. *Id.* at 519. That was not the case when Mr. Patterson was convicted.

The Oregon Supreme Court decision in *State v Phillips*, 317 P.3d 236 (Or. 2013), was the first state decision requiring jurors to agree on whether a person acted as a principal or an accomplice. Before 2013, the law was, at best, unclear. The lower court in *Phillips* had held concurrence was *not* required. *State v Phillips*, 255 P.3d 587, 592 (Or. Ct. App. 2011). And the Oregon Supreme Court had previously said that "an accomplice theory of liability is not itself an independent offense." *State v Blake*, 228 P.3d 560, 563 (Or. 2010). Further, prosecutors sought convictions under accomplice liability theories without instructing the jury that it must concur. *State v Burgess*, 251 P.3d 765, 769 (Or. Ct. App. 2011), *aff'd*, 287 P.3d 1093 (Or. 2012). Under *Mathis*, uncertainty about divisibility of this sort precludes application of the modified categorical approach. 579 U.S. at 519.

> 2. *The State Defines Causing Physical Injury To Include Nonviolent Conduct That Is "Extensively Intertwined" With Another Person's Causation of Physical Injury.*

Even when committed as a principal, Oregon Assault III is not a violent felony for the additional reason that, under state law, "causing" physical injury broadly includes nonviolent acts and omissions that are "extensively intertwined" with physical injury caused by another. *See Phillips*, 317 P.3d at 238 ("A person can

30

'cause' physical injury within the meaning of Or. Rev. Stat. § 163.165(1)(e) . . . [by] 'engag[ing] in conduct so extensively intertwined with [another person's] infliction of the injury that such conduct can be found to have produced the injury.'"); *State v Pine*, 82 P.3d 130, 137 (Or. 2003).

For example, in *Phillips*, the Oregon Supreme Court found that the defendant "caused" a victim's injury even though another person physically struck him, while the defendant merely blocked potential aid. 317 P.3d at 241. After *Phillips*, state prosecutors argued in a later case that a defendant had "caused" injury to a victim under the "extensively intertwined" standard by helping plan the assault, permitting his house to be used as the setting, and purchasing beer to be used as a lure. *State v Ryder*, 340 P.3d 663, 666 n.2 (Or. Ct. App. 2014).[5]

Because Oregon's broad construction of causation includes nonviolent acts that do not cause injury directly or indirectly but merely render a victim vulnerable to the acts of another, the state offense does not categorically require the "use of physical force *against the person of another*" under the ACCA's force clause. *See Borden*, 141 S. Ct. at 1825-26.

---

[5] The Oregon Court of Appeals ultimately resolved the case by finding that the defendant's conduct was sufficient for a conviction as an accomplice and did not analyze whether the defendant was also directly liable for conduct "extensively intertwined" with the infliction of injury. *Ryder*, 340 P.3d at 669. Nevertheless, the state's argument demonstrates its broad view of the scope of the statute.

31

3.    The State Law Does Not Require Any Intentional Or Knowing Use Of Force Within The Meaning Of <u>Borden</u>.

Finally, Or. Rev. Stat. § 163.165(1)(e) is also overbroad because it does not require that a defendant intentionally or knowingly use violent force.

By its terms, Or. Rev. Stat. § 163.165(1)(e) does not prohibit any specified means of causing injury. Rather, the statute covers "a vast array of actions resulting, either directly or indirectly, in physical injuries." *See State v Hendricks*, 359 P.3d 294, 298-99, 303 (Or. Ct. App. 2015) (holding that the elements of fourth-degree assault do not specify the means for causing the result). Although the statute does specify that a defendant must act with a *mens rea* of at least "knowingly," Oregon courts have concluded that the "knowingly" mental state attaches only to the conduct element of the statute, not the causation of injury result. *State v Barnes*, 986 P.2d 1160, 1167 (Or. 1999). Thus, the offense requires only that the defendant be aware of the "assaultive nature" of his or her conduct. *Id.* "[A]ssaultive nature" has not been defined. *State v English*, 343 P.3d 1286, 1289 (Or. Ct. App. 2015).

Under *Barnes*, a defendant may commit an assaultive act "knowingly" by engaging in the type of nonviolent "offensive touching" that would not rise to the level of violent physical force under the ACCA. *See, e.g.*, *United States v Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014) (describing "bumping," "jolting, "grabbing," and "spitting" as assaultive actions that fall below the ACCA

32

violent force threshold). So long as the act "causes" injury (or is extensively intertwined with causing injury), then it satisfies the state definition of assault, even if the resulting injury was not an intended or anticipated result. *See Barnes*, 986 P.3d at 1167 (holding that "the state needs to prove only that defendant was aware of the assaultive nature of his conduct and that his conduct in fact caused the victim . . . physical injury.")

Oregon's definition of "knowingly" does not satisfy the required *mens rea* under the ACCA's force clause as described in *Borden* because it does not require a defendant's awareness that injury—or even violence capable of causing injury—"is practically certain to follow from his conduct." *Borden*, 141 S. Ct. at 1823 (defining *mens rea* of knowingly for purposes of the ACCA). Thus, Assault III applies to a defendant's use of reckless or negligent physical force.

For all three of these reasons, considered together or separately, the Court should hold that Oregon Assault III under Or. Rev. Stat. § 163.165(1)(e) does not categorically require the intentional or knowing use of violent physical force and so does not qualify as a violent felony.

### D. Mr. Patterson's Oregon Strangulation Conviction Does Not Qualify As A Violent Felony.

Under Oregon Revised Statues Or. Rev. Stat. § 163.187(1)(b), "a person commits the crime of strangulation if the person knowingly impedes the normal

33

breathing or circulation of the blood of another person by . . . [a]pplying pressure on the throat, neck or chest of the other person[.]"

Based on its plain terms, the strangulation statute does not require *violent* physical force. The statute applies to *any* obstruction of "normal breathing or circulation of the blood," committed by applying pressure to another person's throat, neck or chest, no matter how slight the obstruction nor for how long the pressure is applied.

Although this Court previously held in *Flores-Vega v Barr*, 932 F.3d 878, 883-84 (9th Cir. 2019), that strangulation is a "crime of violence" under the force clause in 18 U.S.C. § 16(a), that case was wrongly decided and should be reconsidered. The Court in *Flores-Vega* looked to the state opinion in *State v Kaylor*, 289 P.3d 290 (Or. Ct. App. 2012), as an example where the obstructed breathing was sufficiently forceful to cause injury. *Flores-Vega*, 932 F.3d at 883. In *Kaylor*, a certified nursing assistant in a nursing home placed his hand over a resident's mouth for at least ten seconds, causing the resident to become "bright red in the face" and look "terrified." *Kaylor*, 289 P.3d at 292. Although the conduct did not in fact cause injury, this Court in *Flores-Vega* summarily concluded that it was "capable" of doing so and thus went beyond "mere offensive touching." *Flores-Vega*, 932 F.3d at 883.

34

But *Kaylor* does not define the least culpable conduct penalized by Or. Rev. Stat. § 163.187. Rather, by the statute's plain terms, covering a victim's mouth for even one second would suffice, so long as the conduct impeded normal breathing or blood circulation. Even if the conduct in *Kaylor* can be deemed violent due to the 10-second time frame and the apparent impact on the victim, a mere momentary impairment of breathing could not realistically cause physical injury.

Accordingly, the Court should hold that Oregon Strangulation under Oregon Revised Statues Or. Rev. Stat. § 163.187(1) is not a violent felony.

**E.     The District Court's Finding That The 2014 Strangulation Counts Were "Separate Temporally" Failed To Satisfy The Different-Occasions Element Under *Wooden*.**

The invalidity of any one of the prior convictions that the district court held to be violent felonies should result in reversal of Mr. Patterson's ACCA sentence. Although the district court concluded that Mr. Patterson three Strangulation convictions each counted separately as violent felonies, which would make the Assault III conviction a surplus, the occasions clause finding cannot be sustained under *Wooden.* The district court's only articulated basis for counting the two 2014 strangulation convictions as separate predicates was that they were "separate temporally," ER-38, echoing the government's contention that the underlying indictment charged the counts as "separate and distinct" acts. ER-20.

35

Under *Wooden*, merely being temporally distinct is not enough to find that prior crimes were committed on separate occasions. 142 S. Ct. at 1070-71. As the defense argued, even by the state's accounting, the prior strangulations "occurred on the same date with the same victim." ER-73. The government offered no evidence to suggest that the two offenses were separated by significant intervening events, that they occurred in different physical locations, or that they were not intertwined through a common scheme or purpose. *See Wooden*, 142 S. Ct. at 1070-71 (identifying relevant factors). Thus, even the Court holds that Strangulation qualifies as a violent felony, the two counts of Strangulation in Mr. Patterson's 2014 docket should have counted, at most, as a single prior violent felony conviction.

**Conclusion**

For the foregoing reasons, Mr. Patterson respectfully requests this Court to vacate his sentence and remand for resentencing without application of the ACCA's statutory minimum term.

Respectfully submitted this 21st day of February, 2023.

*/s/ Brian C. Butler*
Brian C. Butler
Attorney for Defendant-Appellant

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 22-30088

I am the attorney or self-represented party.

**This brief contains** | 8,372 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Brian Butler | **Date** | 2/21/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**       *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 22-30088

The undersigned attorney or self-represented party states the following:

(●) I am unaware of any related cases currently pending in this court.

(○) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

(○) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/Brian Butler | **Date** | 2/21/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**                                                                 *New 12/01/2018*